UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ALICIA MORGAN,
    Plaintiff,

v.

STATE OF CONNECTICUT DEPARTMENT OF MOTOR VEHICLES
    Defendant.

No. 3:17-CV-2091 (MPS)

## RULING ON THE DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT

Plaintiff Alicia Morgan filed this action against Defendant, the State of Connecticut Department of Motor Vehicles ("the DMV"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. In Count One of her amended complaint, Morgan alleges that the DMV discriminated against her by subjecting her to a hostile work environment because of her race. In Count Two, she alleges that she was terminated in retaliation for filing a complaint of racial discrimination with the Connecticut Commission on Human Rights and Opportunities ("CCHRO") and the United States Equal Employment Opportunity Commission ("EEOC"). The DMV moves to dismiss both counts under Fed. R. Civ. P. 12(b)(6). It asserts that Morgan failed to allege facts showing the existence of a hostile work environment in support of Count One. The DMV also argues that Morgan failed to allege facts suggesting a causal connection between her EEOC/CCHRO complaint and her termination in support of Count Two. For the reasons discussed below, the motion to dismiss is GRANTED with respect to Count One and DENIED with respect to Count Two.

    **I.**    **Factual Allegations**

The following facts are taken from Morgan's amended complaint (ECF No. 21) and are treated as true for the purposes of the motion to dismiss:

Plaintiff Alicia Morgan is an African American woman. (*Id.* at 1 ¶ 3.) Defendant, the DMV, is an agency in the Executive Branch of the State of Connecticut. (*Id.* at 1-2 ¶¶ 4.) The DMV employed Morgan as an Inspector from February 2013 through April 2017. (*Id.* at 2 ¶ 6; *id.* at 7 ¶ 15.) Morgan's performance evaluations were always "satisfactory or better" (*Id.* at 2 ¶ 6), but in 2014 she was denied "selective and preferred job assignments." (*Id.* at 2 ¶ 7.) The DMV Chief explained "that she was lacking in certain qualifications," but he did not provide further detail. (*Id.*) The job assignments were given to Caucasian men. (*Id.*)

On February 14, 2016, Morgan attended a mandatory training on the use of force taught by three Caucasian men. (*Id.* at 2 ¶ 7.) Although she believed she had completed the training properly, she was notified a month later by a Caucasian lieutenant that the instructors had "stated that her attitude was negative" and "that she did not take the training seriously." (*Id.* at 2 ¶ 8.) The instructors accused Morgan of saying "that she would shoot first and let the courts decide the outcome." (*Id.* at 2-3 ¶ 8.) Morgan denies the instructors' claims. (*Id.*) She was required to complete a remedial training program after March 27, 2016, and she was notified that she had completed the program successfully on April 7, 2016. (*Id.* at 3 ¶ 9.) On April 10, 2016, though, she was required to "submit to another meeting" about her attitude and statements at the original February training. (*Id.* at 3 ¶ 9.) She asserts that the meeting was "contrary to established practice within" the DMV. (*Id.*)

In the summer of 2016, Morgan was involved in two traffic incidents while on duty. First, she was "involved in an early morning pursuit of a speeding vehicle" on June 21, 2016. (*Id.* at 3 ¶ 11.) She reported the pursuit to her supervisors as required. (*Id.*) Second, she was involved in a

"traffic incident in which she required backup support from other officers" on July 26, 2016. (*Id.* at 3 ¶ 12.) She states that she "handled the situation appropriately and within departmental guidelines." (*Id.*) The same day, she was placed on indefinite paid administrative leave. (*Id.* at 3 ¶ 13.) She was required to attend a fact-finding hearing on September 16, 2016. (*Id.*) A lieutenant with the DMV later testified that no Inspector had ever been disciplined for engaging in a pursuit like the incident on June 21. (*Id.* at 4 ¶ 16.) He also stated that Morgan "had not violated any appropriate procedures in her handling of the incident on July 26 . . . ." (*Id.* at 9 ¶ 22.)

Morgan filed a racial discrimination complaint with the EEOC and the CCHRO on September 19, 2016, while still on administrative leave. (*Id.* at 7 ¶ 14.) The DMV sent her a letter on April 7, 2017, terminating her employment effective April 20, 2017. (*Id.* at 7 ¶ 15.) The letter stated that her termination was "related to the incidents described above." (*Id.* at 8 ¶ 20.) Morgan asserts that she was the "only DMV [I]nspector subjected to a disciplinary termination for any reason whatsoever" between 2012 and April 20, 2017 (*Id.* at 9 ¶ 23.) The DMV opposed her application for unemployment compensation benefits, requiring Morgan to participate in an evidentiary hearing at the Connecticut Department of Labor, at which she prevailed over the DMV's opposition. (*Id.* at 9 ¶¶ 21-22.)

Morgan received a Notice of Right to Sue from the EEOC and CCHRO on September 20, 2017. (*Id.* at 2 ¶ 5.) She filed this action on December 18, 2017. (ECF No. 1.)

**II.     Legal Standard**

Under Rule 12(b)(6), the Court must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts all of the complaint's factual allegations as true when evaluating a motion to dismiss. *Id.* at 572. The Court must "draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). "However, the tenet that a court must accept a complaint's allegations as true is inapplicable to '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Gonzales v. Eagle Leasing Co.*, No. 3:13-CV-1565 JCH, 2014 WL 4794536, at *2 (D. Conn. Sept. 25, 2014) (citing *Iqbal*, 556 U.S. at 678). Thus, "[w]hen a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims, it is appropriate to grant [a] defendant[']s motion to dismiss." *Scott v. Town of Monroe*, 306 F. Supp. 2d 191, 198 (D. Conn. 2004).

"[T]o survive a motion to dismiss, a Title VII plaintiff's complaint must be facially plausible and allege sufficient facts to give the defendant fair notice of the basis for the claim; it need not, however, make out a prima facie case." *Brown v. Daikin America, Inc.*, 756 F.3d 219, 228–29 & n. 10 (2d Cir.2014); *see also E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (reconciling *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) and *Iqbal*, 556 U.S. at 680) ("[W]hile a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss, it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed.")

**III. Discussion**

    **A. Hostile Work Environment**

4

Count One of the amended complaint alleges that Morgan "was subjected to a hostile working environment because of her race." (ECF No. 21 at 4 ¶ 15.)[1] "Title VII of the Civil Rights Act of 1964 makes it 'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting 42 U.S.C. § 2000e–2(a)(1)). Under Title VII, employers may not require their employees "to work in a discriminatorily hostile or abusive environment." *Id.* To state a claim for hostile work environment, an employee must plead facts showing (1) that the employer's conduct created or perpetuated a work environment "that a reasonable person would find hostile or abusive"; (2) that the employee actually perceived the environment as hostile or abusive; and (3) that the environment existed because of plaintiff's race or other characteristic protected by Title VII. *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001), as amended (Apr. 20, 2001). An objectively hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Harris*, 510 U.S. at 21. Factors that courts consider "include the frequency of the discriminatory conduct; its severity; whether it is physically

---

[1] Count One alleges that the DMV "discriminated against the plaintiff in employment *and* subjected her to a hostile working environment because of her race." (ECF No. 21 at 1 ¶ 1) (emphasis added). The amended complaint thus arguably alleges employment discrimination under Title VII in addition to hostile work environment. If Morgan did intend to raise an employment discrimination claim, however, she abandoned it by failing to address the DMV's arguments for dismissal of such a claim. (*See* ECF No. 32-1 at 3-6) (arguing that Morgan's Title VII discrimination claim should be dismissed); *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-442 TPG FM, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage, where review is limited to the pleadings, a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim."). Even assuming Morgan had not abandoned the claim, dismissal would be appropriate because, as described in greater detail below, the complaint fails to allege any connection between the four employment actions it describes and Morgan's race. *See Littlejohn v. City of New York*, 795 F.3d 297, 313 (2d Cir. 2015) (noting that a plaintiff suing for employment discrimination must plead facts suggesting that adverse employment action "occurred under circumstances giving rise to an inference of discrimination"). Count One, which is not based on the termination, also fails to allege an adverse employment action for purposes of a discrimination claim.

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23.

In this case, the complaint fails to state facts sufficient to establish that the DMV created a hostile work environment. Morgan was employed with the DMV for approximately 3 ½ years (ECF No. 21 at 2 ¶ 6; id. at 3 ¶ 12.) The amended complaint describes four incidents over that period that Morgan asserts support her claim: (1) she was passed over for preferred job assignments in 2014 (ECF No. 21 at 2 ¶ 7); (2) she was required to complete remedial use-of-force training after March 27, 2016, based on false claims about her attitude and statements she allegedly made (*id.* at 3 ¶ 9); (3) on April 10, 2016, she was subjected to a meeting, against DMV policy, based on the same false claims and despite having successfully completed the remedial course (*id.*); and (4) on July 26, 2016, she was placed on administrative leave following two traffic incidents in the summer of 2016 (*id.* at 4 ¶ 15).[2] These allegations do not support an inference that the DMV was "permeated with discriminatory intimidation, ridicule, and insult . . . ." *Harris*, 510 U.S. at 21. The Second Circuit has required the plaintiff to show "more than a few isolated incidents of racial enmity . . . there must be a steady barrage of opprobrious racial comments . . . ." *Williams v. Cty. of Westchester*, 171 F.3d 98, 101 (2d Cir. 1999) (citations and quotation marks omitted). Here, the plaintiff has not alleged any overtly hostile or harassing conduct. The incidents she describes allegedly occurred months or years apart and pertained to her employment. Indeed, Morgan does not claim that anything negative occurred related to her employment for all of 2015. Even in the spring and summer of 2016 when three of the four events in her complaint allegedly occurred, she

---

[2] Although the amended complaint also states that Morgan was terminated in April 2017, that allegation is only asserted in support of her retaliation claim. (*See Id.* at 8 ¶ 19; *see also* ECF No. 34 at 6-7.)

6

does not allege any conduct between the incidents that suggests her work environment was hostile or abusive.

Morgan's hostile work environment claim also fails because she does not plead any facts to support an inference that the incidents she describes occurred because of her race. "While direct evidence of discrimination is not required and cases such as this often rest on the cumulative weight of circumstantial evidence . . . 'a jury cannot infer discrimination from thin air.'" *Garzon v. Jofaz Transp., Inc.*, No. 11-CV-5599 RRM VVP, 2013 WL 783088, at *3 (E.D.N.Y. Mar. 1, 2013) (citations omitted) (quoting *Lizardo v. Denny's, Inc.* 270 F.3d 94, 104 (2d Cir. 2001). Morgan alleges that she was passed over for preferred assignments in favor of Caucasian men, but she does not allege, even in a conclusory fashion, that those decisions were based on race. Neither does she allege that she was as qualified as those who did receive the assignments. *See Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (quotation marks omitted). ("To establish an inference of discrimination, a plaintiff must allege that she was similarly situated in all material respects to the individuals with whom she seeks to compare herself."). Although Morgan claims that she is the only Inspector to ever have been "subjected to any form of disciplinary action for engaging in a pursuit like" she did on June 21 (ECF No. 21 at 4 ¶ 16), she does state any facts from which to infer that she was singled out for discipline because of her race. She also does not address whether any prior Inspectors were disciplined following incidents like the one in which she was involved on July 26. Ultimately, the only statement in the complaint clearly tying her treatment to her race is the assertion that she "was subjected to a hostile working environment because of her race." But the Second Circuit has "rejected as conclusory the allegation that 'race was a motivating factor' absent any reason to suspect that [the decision in question] had anything to do with [the plaintiff's] race." *Gregory v. Daly*, 243 F.3d 687, 692 (2d Cir. 2001), as amended (Apr. 20, 2001). Overall,

there are no facts reasonably connecting Morgan's race to the incidents in the complaint, and she has failed to "nudge [her] claims across the line from conceivable to plausible . . . ." *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d at 254.

### B. Retaliation

Count Two of the amended complaint alleges that the DMV "retaliated against [Morgan] for having opposed and complained about racial discrimination in her employment." (ECF No. 21 at 5 ¶ 1.) "[F]or a retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against [her], (2) because [s]he has opposed any unlawful employment practice." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018). In this case, there is no dispute that the amended complaint establishes adverse employment action against Morgan—she was terminated effective April 20, 2017. (*Id*. at 7 ¶ 15.) There is also no dispute that Morgan allegedly opposed an unlawful employment practice by filing a complaint with the EEOC and CCHRO. (*Id*. at 7 ¶ 14.) The only issue, then, is whether the DMV terminated Morgan *because* she filed with the EEOC and CCHRO. I find that the amended complaint alleges facts sufficient to support an inference of a causal connection between the EEOC/CCHRO complaint and Morgan's termination

"Close temporal proximity between the plaintiff's protected action and the employer's adverse employment action may in itself be sufficient to establish the requisite causal connection between a protected activity and retaliatory action." *Kaytor v. Elec. Boat Corp*., 609 F.3d 537, 552 (2d Cir. 2010). There is no "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between [a protected activity] and an allegedly retaliatory action." *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013).

Courts have found a sufficiently close temporal connection when the time between the protected activity and apparent retaliation was as long as eight months. *See Douglas v. City of Waterbury*, 494 F. Supp. 2d 112, 125 (D. Conn. 2007) (collecting cases). Morgan filed her complaint with the EEOC and CCHRO on September 19, 2016. (ECF No. 21 at 8 ¶ 16.) The DMV was notified of the complaint and responded on November 14, 2016. (*Id.*) Morgan was terminated effective April 20, 2017—seven months after she filed her complaint and five months after the DMV had replied. The time between Morgan's complaint and her termination is within the range that the Second Circuit has held allows an inference of causation. *See Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001) (collecting cases finding temporal proximity sufficient to establish a causal connection between the protected activity and adverse employment action, including a period up to eight months).

The DMV argues that the temporal proximity between Morgan's termination and her EEOC complaint is insufficient in this case because the DMV had already initiated disciplinary proceedings against Morgan when she filed her complaint. *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001), as amended (June 6, 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.")[3] The DMV implicitly argues that placing Morgan on administrative leave was only the first step in a process that would inevitably have resulted in her termination. But on a motion to dismiss, I must

---

[3] In each case that the DMV cites, the court was considering a motion for summary judgment and applied a more stringent standard than the one I must apply on a motion to dismiss. *Id.*; *Rumsey v. Ne. Health, Inc.*, 89 F. Supp. 3d 316, 337 (N.D.N.Y. 2015); *Risco v. McHugh*, 868 F. Supp. 2d 75, 114 (S.D.N.Y. 2012). The *McDonnell Douglas* framework applies to retaliation claims on summary judgment. Thus, the plaintiff has the burden of establishing a prima facie case of retaliation and must point to evidence supporting an inference of a causal connection between the protected activity and adverse employment action. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014). "[T]o survive a motion to dismiss, a Title VII plaintiff's complaint must be facially plausible and allege sufficient facts to give the defendant fair notice of the basis for the claim; it need not, however, make out a prima facie case." *Daikin America*, 756 F.3d at 228–29 & n. 10.

accept Morgan's allegations as true and draw all reasonable inferences in her favor. Morgan asserts that a DMV lieutenant testified that no Inspector had ever been disciplined for engaging in a chase as she had on June 21, and that Morgan followed all DMV protocols in connection with the July 26 incident. (ECF No. 21 at 9 ¶ 22.) The lieutenant's testimony supports an inference that, despite being placed initially on administrative leave, Morgan would have been absolved of wrongdoing in connection with those incidents had she not filed a discrimination complaint against the DMV with the CHRO. Thus, the fact that the DMV placed her on leave does not preclude an inference of causation from the temporal proximity between Morgan's protected activity and her termination. As a result, the amended complaint states a claim for retaliation under Title VII.

## IV. Conclusion

For the foregoing reasons, the motion to dismiss is GRANTED with respect to Count One and DENIED with respect to Count Two. Within 14 days of this ruling, the parties shall confer and file an updated report in accordance with the requirements of Local Rule 26(f).

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:  Hartford, Connecticut
        November 5, 2018